No. 21-16540

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

ANTHONY CHERNETSKY,
*Plaintiff-Appellant,*

v.

STATE OF NEVADA, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Nevada
No. 3:06-cv-00252-RCJ-WGC
Hon. Robert C. Jones

---

**APPELLANT'S OPENING BRIEF**

---

James A. Sonne (supervisor)
Zeba A. Huq (supervisor)
Siena Marcelle (certified law student)
Nathan Weiser (certified law student)
STANFORD LAW SCHOOL
RELIGIOUS LIBERTY CLINIC
559 Nathan Abbott Way
Stanford, CA 94305
Telephone: (650) 723-1422
Facsimile: (650) 723-4426
jsonne@law.stanford.edu

Samuel Weiss
Oren Nimni
RIGHTS BEHIND BARS
416 Florida Avenue, N.W.
Suite 26152
Washington, D.C. 20001
Telephone: (202) 455-4399
sam@rightsbehindbars.org

*Attorneys for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ............................................................................... 1

JURISDICTIONAL STATEMENT ............................................... 3

STATEMENT OF ADDENDUM ................................................... 4

ISSUES PRESENTED ...................................................................... 4

STATEMENT OF THE CASE ......................................................... 5

    A.  Anthony Chernetsky is a Nevada inmate and devout Wiccan whose religion requires natural anointing oils ............................. 5

    B.  Chernetsky uses natural anointing oils to practice his faith in prison for years—until NDOC adopts AR 810 .......................... 6

    C.  Chernetsky first challenges AR 810 in court in 2006, and a long and winding road of litigation ensues—including two prior appeals and a policy change ................................................. 7

    D.  NDOC revises AR 810 to allow religious oils. This Court remands to confirm the revision includes natural oils ................. 8

    E.  Despite its revision to AR 810 that now allows "non-flammable, non-toxic anointing oils," NDOC refuses to include natural oils in that permitted category ............................ 9

    F.  The district court upholds NDOC's ban on natural oils, rejecting as a matter of law in a single paragraph Chernetsky's RLUIPA challenge .................................................. 11

    G.  Chernetsky files this appeal. Meanwhile, this Court affirms in *Johnson v. Baker* that aspects of NDOC's religious-oils policy violate RLUIPA .................................................................. 13

STANDARD OF REVIEW ...................................................... 14

SUMMARY OF ARGUMENT ................................................................. 15

ARGUMENT .......................................................................................... 18

I.   THIS COURT SHOULD REVERSE BECAUSE A TOTAL BAN ON NATURAL OILS VIOLATES RLUIPA'S REQUIREMENT THAT SUBSTANTIAL BURDENS ON INMATE RELIGIOUS EXERCISE MUST MEET STRICT SCRUTINY ............................. 18

     A.  RLUIPA broadly protects inmate religious exercise in general, and the use of religious oils in particular ...................... 18

     B.  Chernetsky requires natural oils in the practice of his faith. NDOC's ban on such oils therefore substantially burdens his religious exercise under RLUIPA ................................................. 22

     C.  As in *Johnson*, NDOC's generalized and speculative concerns cannot satisfy strict scrutiny ........................................ 24

         1.  NDOC fails to connect its denial of Chernetsky's natural oils to its claimed security risks ................................................. 24

         2.  NDOC fails to connect its denial of Chernetsky's natural oils to its supposed administrative burdens ............................ 29

     D.  NDOC's ban on natural oils also fails because it is not the least restrictive means for prison safety or administrability ..... 32

II.  THIS COURT SHOULD REVERSE AND REMAND FOR ENTRY OF A JUDGMENT THAT GUARANTEES CHERNETSKY NATURAL ANOINTING OILS. IN THE ALTERNATIVE, IT SHOULD REMAND FOR TRIAL ................... 35

CONCLUSION ....................................................................................... 37

ADDENDUM ......................................................................................... 1a

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Balint v. Carson City*,
180 F.3d 1047 (9th Cir. 1999) ............................................................. 14

*Beraha v. Nevada*,
No. 3:17-cv-366, 2020 WL 3949223 (D. Nev. Apr. 27, 2020) ............. 28

*Blake v. Rubenstein*,
No. 2:08-906, 2016 WL 5660355 (S.D.W.Va. Apr. 5, 2016) ... 13, 24, 27

*Covey v. Hollydale Mobilehome Estates*,
116 F.3d 830 (9th Cir. 1997) ............................................................... 14

*Curry v. Cal. Dep't of Corrs.*,
No. C-09-3408, 2012 WL 968079 (N.D. Cal. Mar. 21, 2012) ....... 12, 24

*Cutter v. Wilkinson*,
554 U.S. 709 (2005) ............................................................................. 19

*Davis v. Powell*,
901 F.Supp.2d 1196 (S.D. Cal. 2012) ................................................. 26

*Greene v. Solano Cnty. Jail*,
513 F.3d 982 (9th Cir. 2008) ........................................................*passim*

*Greene v. Teslik*,
No. 21-2154, 2023 WL 2320767 (7th Cir. Mar. 2, 2023) ................... 29

*Holt v. Hobbs*,
574 U.S. 352 (2015) ....................................................................*passim*

*Johnson v. Baker*,
23 F.4th 1209 (9th Cir. 2022) .....................................................*passim*

*Johnson v. Lopez*,
No. 2:15-cv-884, 2020 WL 6043213 (D. Nev. Oct. 9, 2020) .............. 13

*McKeen-Chaplin v. Provident Sav. Bank*,
    862 F.3d 847 (9th Cir. 2017) ............................................................... 15

*Nance v. Miser*,
    700 F. App'x 629 (9th Cir. 2017) ................................................... 22, 33

*Padfield v. AIG Life Ins. Co.*,
    290 F.3d 1121 (9th Cir. 2002) ............................................................ 15

*Ramirez v. Collier*,
    142 S.Ct. 1264 (2022) .................................................................. 28, 35

*Riggins v. Clarke*,
    403 F. App'x 292 (9th Cir. 2010) ................................................... 12, 24

*Scott v. Harris*,
    550 U.S. 372 (2007) ........................................................................... 14

*Shakur v. Schriro*,
    514 F.3d 878 (9th Cir. 2008) ................................................... 15, 31, 37

*Thomas v. Ponder*,
    611 F.3d 1144 (9th Cir. 2010) ............................................................ 15

*Turner v. Safley*,
    482 U.S. 78 (1987) .......................................................................*passim*

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) ........................................... 20, 21, 27, 29

## Statutes

28 U.S.C. § 1291 ...................................................................................... 4

28 U.S.C. § 1331 ...................................................................................... 3

42 U.S.C. § 2000cc *et seq.* ................................................................*passim*

## Rules and Regulations

Cir. R. 28-2.7 ............................................................................ 4

NDOC AR 443 ................................................................. 26, 34

NDOC AR 750 ........................................................... 26, 31, 33

NDOC AR 810 ................................................................*passim*

NDOC AR 810.2 .............................................................*passim*

## Other

146 Cong. Rec. 16698 (2000) ................................................. 19

## INTRODUCTION

The federal Religious Land Use and Institutionalized Persons Act ("RLUIPA") famously provides broad protection for inmate religious exercise. Specifically, RLUIPA guarantees inmates the right to engage in their sincere religious practice absent a prison's particularized showing that its limitation on such practice is the least restrictive way to serve a compelling interest. For nearly two decades, Nevada inmate Anthony Chernetsky has pursued this lawsuit to enforce that guarantee. The time has come to end the saga in his favor.

Since 2004, the Nevada Department of Corrections ("NDOC") has banned outright a crucial aspect of Chernetsky's faith: anointment with natural oils. Despite being rebuked by this Court in a parallel religious-oils case and now allowing synthetic scented oils, NDOC has refused to budge on natural oils—of any kind or amount, even where they are non-flammable and non-toxic, and regardless of whether they are donated, provided by an approved vendor, or kept with the chaplain.

Proceeding *pro se* in the district court, Chernetsky has endured a long and lonely struggle to vindicate his rights under RLUIPA. This case has seen everything: three summary-judgment rulings, a mid-litigation

policy change, and now three appeals to this Court. In all of that time, NDOC has failed to offer a concrete and particularized justification for denying Chernetsky the oils his faith requires. Instead, it has relied on conclusory assertions about safety and administrability, and without distinguishing between natural and synthetic oils—a far cry from RLUIPA's insistence on detailed evidence tailored to the plaintiff.

Although the district court granted summary judgment to NDOC on the natural-oils policy, it dedicated all but one paragraph of its opinion to the wrong legal test: the deferential "*Turner* standard" for assessing prison policies under the First Amendment. *Turner* stands in stark contrast to the heightened scrutiny RLUIPA requires: a compelling interest pursued in a way least restrictive of religious exercise. *Compare Turner v. Safley*, 482 U.S. 78 (1987), *with* 42 U.S.C. § 2000cc-1(a). Regardless, the lower court's RLUIPA finding fails because it makes no distinction between natural and synthetic oils; ignores that NDOC allows access to substances posing similar supposed risks; nowhere addresses any alternatives, such as housing the oils with a chaplain or facilitating it through donation or purchase from an approved vendor; and its analysis is based solely on concerns about scented oils, which this Court

2

has since authorized for personal use in *Johnson v. Baker*, 23 F.4th 1209 (9th Cir. 2022).

For nearly two decades, this case has been stuck in a loop: summary judgment, reversal, remand, repeat. All the while, Chernetsky has been denied the right to practice as his religion requires. This Court should bring the matter to a close and reverse and remand for entry of a judgment that finally guarantees Chernetsky natural anointing oils.

## JURISDICTIONAL STATEMENT

Appellant Chernetsky is an inmate housed by Appellee NDOC. After exhausting administrative remedies, he filed this lawsuit in 2006 in the U.S. District Court for the District of Nevada. 3-ER-408–421. Chernetsky alleged NDOC violated the Religious Land Use and Institutionalized Persons Act, among other laws, by refusing to accommodate his religious practices. *Id.*

Across each iteration of this case, including on remands from this Court after respective reversal and vacatur of two prior summary-judgment orders for NDOC on certain counts, the district court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000cc-2.

3

The present appeal challenges the district court's latest grant of summary judgment to NDOC; this time, on Chernetsky's sole remaining claim concerning NDOC's prohibition of natural anointing oils that he believes his faith requires. The district court's final judgment was entered on September 7, 2021. 1-ER-10. Chernetsky filed his notice of appeal on September 14, 2021. 3-ER-424. Accordingly, this Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ADDENDUM

The relevant text of the Religious Land Use and Institutionalized Persons Act is set forth in the addendum filed concurrently with this brief. *See* 9th Cir. R. 28-2.7.

## ISSUES PRESENTED

1.  In light of its intervening decision in *Johnson* on scented religious oils or for other reasons, whether this Court should reverse the district court's finding on summary judgment that NDOC's ban on natural oils is the least restrictive means of serving a compelling interest.

2.  Assuming reversal of summary judgment is required, whether this Court should remand for trial on the merits or for entry of judgment in Chernetsky's favor to guarantee him natural religious oils.

4

## STATEMENT OF THE CASE

**A.    Anthony Chernetsky is a Nevada inmate and devout Wiccan whose religion requires natural anointing oils.**

Plaintiff-Appellant Anthony Chernetsky is an inmate in the custody of Defendant-Appellee Nevada Department of Corrections. 3-ER-408. Chernetsky is also a devout adherent of the Wiccan faith, having practiced this faith for decades. 3-ER-413.

The Wiccan faith is a neo-pagan, earth-based religion that focuses on the practitioner's connection to nature. 3-ER-413–414; 2-ER-180. NDOC recognizes Wicca as a religion and has designated Chernetsky as both a member and leader of that community in prison. 3-ER-312.

As part of his religion, Chernetsky believes in the teachings of a Wiccan text called the Dyaddic Book of Shadows. 2-ER-180; *see generally* 2-ER-187–218. This book lays out numerous rituals, including anointing the body with oil. 2-ER-115–116. Specifically, to purify himself to properly observe holy days and perform other forms of worship, Chernetsky believes he must follow "the strict rules of fasting, prayers, anointing and smudging of the body." *Id.* The failure to so prepare in fact bars participation in other Wiccan ceremonies. 2-ER-116. Accordingly,

Chernetsky needs a small quantity of oils to anoint himself as a fundamental aspect of his faith. 2-ER-74.

As with Wicca generally, Chernetsky's faith is "profoundly based on the experience of the sacred relationship with nature" and therefore requires him to use only natural oils. 2-ER-180; 2-ER-14–15; 2-ER-73. Indeed, the Dyaddic Book of Shadows stresses that practitioners must "ensure that . . . oils are as pure and natural as possible." 2-ER-116. Conversely, the text forbids baby oil because it is "cosmetic [and] industrial in nature." *Id.*

## B.  Chernetsky uses natural anointing oils to practice his faith in prison for years—until NDOC adopts AR 810.

For many years of his imprisonment, Chernetsky was able to engage in a robust practice of his faith. 2-ER-177. He was allowed to perform rituals outdoors. *Id.* He worshipped with incense, herbs, and fire. 3-ER-362; 3-ER-414. And, in particular, he was permitted to order natural anointing oils from an approved vendor, AzureGreen. 2-ER-178. According to an NDOC chaplain at the time, Wiccans practiced "without any incidents of abuse or misuse reported." 3-ER-238.

But all of this changed in 2004, when NDOC first promulgated Administrative Regulation 810 ("AR 810"). 3-ER-400. The regulation

forbade several facets of Wiccan practice, including access to incense, herbs, and a sweat lodge—a structure for ceremonial use. 2-ER-38–46.

Pertinently, AR 810 also banned the use of all religious anointing oils. 3-ER-402. NDOC's justification was a "concern[] of inmates masking the use of drugs in their cells." *Id.* And although NDOC continued to allow the purchase of baby oil through the canteen, Chernetsky's faith forbids the use of baby oil for anointment. *Id.*; 2-ER-116.

### C. Chernetsky first challenges AR 810 in court in 2006, and a long and winding road of litigation ensues— including two prior appeals and a policy change.

The burden AR 810 placed on Chernetsky's religious exercise sparked a 17-year legal struggle. The following timeline summarizes these proceedings up to 2017, when a revision to NDOC's policy ushered in the current phase of litigation:

- 2006: Chernetsky files this suit, challenging under the First Amendment and RLUIPA AR 810's burden on his religious practices—including the denial of access to a sweat lodge, to certain types of meals, and to natural oils. 3-ER-408–423.

- 2007: The district court grants summary judgment to NDOC on Chernetsky's claims. 3-ER-326–347.

- 2010: This Court vacates summary judgment on the RLUIPA claims. 3-ER-321–323. Although Chernetsky did not raise his First Amendment claims on appeal, this Court instructs the district court to consider granting leave to amend. 3-ER-323.

- 2013: The district court denies Chernetsky's proposed amendment, leaving only his RLUIPA claims. 3-ER-320.

- 2014: On cross motions, the district court grants summary judgment to Chernetsky on sweat-lodge access, and to NDOC on all other issues—including natural oils. 2-ER-160. Each party appeals their respective losses. 2-ER-153–157.

- 2017: With oral argument in this Court looming, NDOC revises AR 810's policy on religious oils. 2-ER-149.

### D. NDOC revises AR 810 to allow religious oils. This Court remands to confirm the revision includes natural oils.

The revised policy—AR 810.2—impacted the aforementioned 2017 cross-appeals in two ways. First, it made sweat lodges accessible to Wiccan inmates. 2-ER-149. Accordingly, NDOC withdrew its appeal on the grant of summary judgment to Chernetsky on that issue. 2-ER-77.

Second, AR 810.2 allowed inmates to use "non-flammable, non-toxic anointing oils" as "Group Religious Property." 2-ER-149. Oils would be "stored under control of the Chaplain" and used for group services. 2-ER-49. These groups could use up to six one-ounce plastic bottles at a time. *Id.* Individual possession of oils, however, remained banned.[1]

---

[1] AR 810.2 outlines two types of religious property: individual and group. Personal items can be stored in the inmate's cell, while group items must be kept by the chaplain and are only for communal rituals. 2-ER-49.

8

Accordingly, this Court allowed NDOC to drop its appeal on the sweat-lodge claim but vacated the district court's grant of summary judgment to NDOC on religious oils. 2-ER-149–150. Noting that oils are now allowed under AR 810.2, this Court observed that NDOC "appear[ed] to provide Chernetsky with the relief he sought." 2-ER-149. It therefore remanded for the district court to "determine whether there is still a dispute" over the issue of "natural anointing oils," and, if so, to adjudicate that dispute in light of the new policy. 2-ER-149–150.[2]

### E. Despite its revision to AR 810 that now allows "non-flammable, non-toxic anointing oils," NDOC refuses to include natural oils in that permitted category.

Following remand, Chernetsky communicated his understanding that the new regulation permits natural oils. 2-ER-142–144. He further notified NDOC that the only religious oils sold in its canteens—through a company called Prime Products—contained industrial chemicals like glycol (an antifreeze) and isobutylene (a substance used to make gasoline). 2-ER-143–144. Since Chernetsky believes his faith requires

---

[2] This Court also affirmed summary judgment in NDOC's favor on a handful of other claims not at issue here. 2-ER-150–152.

only natural substances, these chemicals made the canteen oils unusable in his religious practice. 2-ER-14–15.

Based on this understanding, Chernetsky then proposed two ways he could access natural oils. First, NDOC could employ the "current procedure . . . for storage of 'oils' during ritual"—that is, AR 810.2's group religious-property policy—to facilitate Chernetsky's use of natural oils. 2-ER-18. Under this arrangement, Chernetsky would receive natural oils through donations, and would have access to the oils only during approved worship; at all other times, the oil would be stored "under control of the Chaplain." 2-ER-49. Second, Chernetsky proposed NDOC could let him obtain the oils through a vendor like AzureGreen. 2-ER-74. This would mirror the situation before NDOC's ban, when Wiccans ordered natural oils from approved vendors for personal use.

NDOC, however, disputed Chernetsky's position that the revised policy allows natural oils. 2-ER-145. It also asserted that natural oils are flammable and toxic. 2-ER-69–70. Additionally, NDOC shared that AzureGreen could no longer be an approved vendor because of a "contractual dispute." 2-ER-145.

In response, Chernetsky indicated that the oils he needed were not toxic and that his religious practice did not use oils "in a combustible manner"—which, he added, would subject an inmate to discipline in any event. 2-ER-142–143. Moreover, Chernetsky pointed out, oil shipments "would be inspected, as normal for incoming items/donations." 2-ER-142. In closing, Chernetsky noted that NDOC already allows inmates to possess items that are flammable or toxic in certain conditions. 2-ER-147.

## F. The district court upholds NDOC's ban on natural oils, rejecting as a matter of law in a single paragraph Chernetsky's RLUIPA challenge.

Defining the dispute as one concerning a "restriction on anointing oils from outside vendors," the district court granted summary judgment to NDOC. 1-ER-2.

Notwithstanding the fact it had previously dismissed Chernetsky's constitutional claims, the district court devoted nearly all of its order to approve AR 810.2 under *Turner v. Safley's* deferential First Amendment test for inmate religious accommodations. 482 U.S. 78 (1987); 1-ER-6–10. In its *Turner* analysis, the court upheld NDOC's restriction on religious oils as having a "valid, rational" connection to prison security and being justified to avoid negative impacts on prison staff and other inmates—

11

including in handling outside packages. 1-ER-8–10. In sharing its concerns about the purchase and use of anointing oils, the court did not address the distinction between natural and synthetic oils; nor did it address receiving oils by donation or an approved vendor. 1-ER-7–10.[3]

Only in its final paragraph did the district court discuss RLUIPA. But rather than make findings on each part of that statute's test, it upheld NDOC's "restriction on outside oils" under RLUIPA as follows:

> "As explained above [in the First Amendment analysis], anointing oils pose a unique security threat to prison institutions. These oils can be used to conceal illicit substances, used in prison tattoos, used to make prison alcohol, and used to prevent cell extractions."

1-ER-10. The court then closed by citing three cases: (1) *Riggins v. Clarke*, 403 F. App'x 292, 295 (9th Cir. 2010), where the inmate failed to show his faith required oils; (2) *Curry v. California Dep't of Corrections*, No. C-09-3408, 2012 WL 968079, at *6 (N.D. Cal. Mar. 21, 2012), where the inmate failed to show a lack of oils substantially burdened his faith; and

---

[3] In its *Turner* analysis, the district court adopted NDOC's position that oils could start fires, create slippery surfaces, conceal scents, disguise substances in empty vials, provoke allergic reactions, make alcohol or tattoo ink, or prevent cell extraction. 1-ER-7–9. In addition, the court cited NDOC's administrative concerns like cost, hassle for mailroom staff, illegal bartering, and burden on the Chaplain and others. 1-ER-9.

(3) *Blake v. Rubenstein*, No. 2:08-906, 2016 WL 5660355, at *23 (S.D.W.Va. Apr. 5, 2016), where the inmate failed to show a ban on scented oils substantially burdened his faith and the court credited the prison's concerns about those scents masking drugs. 1-ER-10.

## G. Chernetsky files this appeal. Meanwhile, this Court affirms in *Johnson v. Baker* that aspects of NDOC's religious-oils policy violate RLUIPA.

Chernetsky filed this (third) appeal from the district court's order upholding the prohibition on natural oils. 3-ER-424. In the meantime, this Court decided another RLUIPA challenge to NDOC's religious-oils policy in *Johnson v. Baker*, 23 F.4th 1209 (9th Cir. 2022).

In *Johnson*, a Muslim inmate challenged AR 810.2's ban on personal possession of scented religious oils. *Johnson v. Lopez*, No. 2:15-cv-884, 2020 WL 6043213, at *1 (D. Nev. Oct. 9, 2020). Under AR 810.2, a prisoner could use these oils only once a week during group worship. *Id.* But Johnson believed he needed oils for all prayers, including individual prayer in his cell. *Id.* After a bench trial, the district court found that NDOC's application of AR 810.2 to Johnson's religious practice violated RLUIPA. *Id.* at *4.

13

This Court affirmed on three grounds. First, it agreed with the district court that AR 810.2 imposed a substantial burden on the inmate's religious practice. *Johnson*, 23 F.4th at 1216. Second, it held that NDOC did not prove with the requisite specificity a compelling interest in banning personal possession of scented oils. *Id.* at 1217. Third and finally, this Court concluded that NDOC's disparate treatment of similar secular items demonstrated its policy was underinclusive—thus failing RLUIPA's least-restrictive-means test. *Id.* at 1217-18.

## STANDARD OF REVIEW

This Court reviews the grant of summary-judgment orders de novo. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997). In assessing such orders, the Court's task is to determine "whether the district court correctly applied the relevant substantive law and whether there are any genuine issues of material fact." *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir. 1999). Facts are reviewed, and reasonable inferences are drawn, in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

For a party to prevail on summary judgment where it would bear the burden of proof at trial, that party must provide supporting evidence

"so powerful that no reasonable jury would be free to disbelieve it." *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (internal quotation marks omitted). Under RLUIPA, an inmate bears the burden of showing that a prison policy imposes a substantial burden on his religious exercise; but once he does, the burden shifts to the prison to prove that its policy is the least restrictive means of achieving a compelling governmental interest. 42 U.S.C. § 2000cc-2(b).

On cross motions, the district court's denial of Chernetsky's motion for summary judgment is reviewable on appeal, too. *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1124 (9th Cir. 2002). Thus, this Court can reverse the grant of summary judgment for NDOC and remand for the district court to enter judgment for Chernetsky. *See McKeen-Chaplin v. Provident Sav. Bank*, 862 F.3d 847, 855 (9th Cir. 2017).[4]

## SUMMARY OF ARGUMENT

After nearly two decades of litigation, this appeal concerns a narrow and straightforward question that this Court should resolve in Chernetsky's favor: whether NDOC's prohibition on the natural oils

---

[4] As a *pro se* inmate below, Chernetsky's papers are interpreted "liberally." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

Chernetsky needs for his faith can meet the strict scrutiny RLUIPA requires for substantial burdens on inmate religious exercise. For not only does NDOC's ban on natural oils (whether donated, bought from an approved vendor, or kept with the chaplain) prevent Chernetsky from exercising a fundamental practice of his faith, NDOC seeks to justify its ban with generalized concerns about "scented oils" that this Court has since allowed for personal use under *Johnson*. 2-ER-68–71.

Five years ago, this Court remanded the case—and for the second time—so the district court could decide the singular issue of whether AR 810.2 satisfies Chernetsky's religious need for "natural anointing oils," and, if not, whether such a restriction is valid under RLUIPA. 2-ER-152. But rather than address NDOC's prohibition on natural oils, the district court granted summary judgment to NDOC on what it called a "restriction on anointing oils from outside vendors." 1-ER-10.

The district court nowhere distinguished in its order natural oils from synthetic oils. Nor did it address any way other than purchases from outside vendors that oils might be provided, used, or stored. What's more, the court spent all but a single paragraph of its analysis upholding NDOC's policy under the deferential test for the since-abandoned First

Amendment claim, rather than RLUIPA strict scrutiny. And in its scant RLUIPA analysis, the district court based entry of summary judgment on general or unsupported concerns that: (1) were not particularized to natural oils—flammability, tattoos, cell extraction, alcohol making; (2) have since been rejected by this Court in *Johnson*—scented concealment of contraband; or (3) failed to consider alternative means of procuring or storing oils–e.g., donation, storage with the chaplain.

In any event, Chernetsky has shown AR 810.2 imposes an unjustified substantial burden on his religious exercise under RLUIPA. Because AR 810.2 forbids the oils that Chernetsky sincerely believes he must use in his faith, it constitutes an "outright ban" on this religious practice, shifting the burden to the prison to meet strict scrutiny. *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008).

Moreover, as with the policy condemned in *Johnson*, NDOC failed to offer "detailed evidence" to prove it has a compelling interest in forbidding natural oils. 23 F.4th at 1217. Indeed, NDOC's existing policies allowing other items that pose the same supposed risks is enough to defeat a showing of compelling interest. Finally, NDOC's categorical ban ignores less restrictive rules it could adopt. In particular, NDOC

could regulate—not ban—natural oils by allowing Chernetsky to receive them through donations or an approved vendor, and could control the volume and storage of oils by housing them with the chaplain.

For these reasons, and as described below, this Court should reverse summary judgment in favor of NDOC. Then, at a minimum, remand for trial is warranted. However, after 17 years and in light of NDOC's repeated failure to make a particularized showing or discount the alternatives available, this Court should resolve the dispute over natural anointing oils in Chernetsky's favor once and for all.

## ARGUMENT

I. **THIS COURT SHOULD REVERSE BECAUSE A TOTAL BAN ON NATURAL OILS VIOLATES RLUIPA'S REQUIREMENT THAT SUBSTANTIAL BURDENS ON INMATE RELIGIOUS EXERCISE MUST MEET STRICT SCRUTINY.**

### A. RLUIPA broadly protects inmate religious exercise in general, and the use of religious oils in particular.

RLUIPA protects the religious practice of inmates "to the maximum extent permitted . . . by the Constitution." 42 U.S.C. § 2000cc-3(g). In so doing, the statute sets a demanding standard: a prison may not substantially burden an inmate's religious beliefs unless the restriction meets strict scrutiny. 42 U.S.C. § 2000cc-1(a). Specifically, RLUIPA

requires a prison to prove that any policy that substantially burdens an inmate's religious exercise is justified by a "compelling governmental interest" pursued in a way "least restrictive" of that exercise. *Id.*

In adopting RLUIPA, Congress stressed that prisoners often "encountered undue barriers to their religious observance," and that it was necessary "to provide greater protection for religious exercise than is available under the First Amendment." *Cutter v. Wilkinson*, 554 U.S. 709, 718 (2005); 146 Cong. Rec. 16698, 16699 (2000). Accordingly, and in contrast to the standard for First Amendment claims under *Turner*, 482 U.S. 78, RLUIPA provides "capacious[]" protection of inmate religious exercise in two ways: it adopts a broad definition of such exercise and sets the most demanding standard in law to justify a prison's substantial burden on that exercise. *Holt v. Hobbs*, 574 U.S. 352, 358 (2015).

*Substantial Burden*

Under RLUIPA, a prisoner must first demonstrate that the policy at issue substantially burdens his sincere religious exercise. Notably, "any exercise of religion, whether or not compelled by or central to a system of religious beliefs," falls within the statute's protection. *Holt,* 574 U.S. at 358 (citing 42 U.S.C. § 2000cc-5(7)(A)). Indeed, RLUIPA applies

19

to "any particular facet" of an inmate's religious practice. *Greene*, 513 F.3d at 987-88. And although the burden on that practice must be "substantial" to trigger RLUIPA protection, this Court has rejected a narrow view of that requirement. *Johnson*, 23 F.4th at 1215. In any event, "an outright ban on a particular religious exercise is a [clear example of a] substantial burden." *Greene*, 513 F.3d at 988.

*Compelling Interest*

Once a prisoner demonstrates the policy substantially burdens his religious exercise, the burden then shifts to the prison to first show a compelling government interest. 42 U.S.C. § 2000cc-1(a). While prison security may qualify as a compelling interest, courts do not "grant unquestioning deference to the government's claim of a general security interest." *Johnson*, 23 F.4th at 1217 (internal quotation marks omitted). Rather, the prison must meet a "focused inquiry" based on "detailed evidence, tailored to the situation before the court"—including the supposed compelling interest in applying the challenged policy to the particular inmate. *Holt*, 574 U.S. at 363; *Warsoldier v. Woodford*, 418 F.3d 989, 1000 (9th Cir. 2005).

*Least Restrictive Means*

As for RLUIPA's further requirement that the prison show that any compelling interest is pursued in a manner least restrictive of religious exercise, this latter condition is an "exceptionally demanding" one. *Holt*, 574 U.S. at 353. In particular, the prison must demonstrate it "actually considered and rejected the efficacy of less restrictive measures" before implementing its policy. *Warsoldier*, 418 F.3d at 999. And in this analysis, a prison's more favorable treatment of analogous items undermines any such showing. *Johnson*, 23 F.4th at 1217.

*Religious Oils*

Importantly, just last year this Court concluded that NDOC failed to justify AR 810.2—the very regulation NDOC applied here—in the face of a RLUIPA challenge. In *Johnson*, this Court affirmed a trial finding that NDOC did not establish a compelling interest in forbidding individual possession of a half-ounce bottle of scented oil. 23 F.4th at 1217. In particular, this Court held that NDOC provided no evidence on the quantity of oil needed to implicate its safety concern of masking contraband. *Id.* Additionally, the Court rejected NDOC's argument that

21

its approach was the least restrictive means to address this concern because it allowed other scented items. *Id.* at 1217-18.

This Court similarly concluded in an unpublished 2017 decision that an Arizona prison ban on the purchase of scented oils through an outside vendor failed under RLUIPA. *Nance v. Miser*, 700 F. App'x 629, 630 (9th Cir. 2017). There, the prison acknowledged that allowing the sale of oil from outside vendors and having that oil stored with the chaplain posed no safety concerns. *Id.* at 633. Thus, this Court reversed and directed entry of summary judgment for the inmate. *Id.*

### B. Chernetsky requires natural oils in the practice of his faith. NDOC's ban on such oils therefore substantially burdens his religious exercise under RLUIPA.

As noted above, this Court has emphasized it has "little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden" under RLUIPA. *Greene*, 513 F.3d at 988. Here, the district court found that the "parties agree that [Chernetsky] is a sincere Wiccan and that he was denied access to the anointing oils that [he] claims [are] necessary for the practice of his religion." 1-ER-6. Because natural oils are needed for the religious exercise Chernetsky seeks to

engage in here, NDOC's ban on these oils constitutes a substantial burden. *Greene*, 513 F.3d at 987.

The *Johnson* case further supports a showing of substantial burden. There, the prisoner's faith required him to use scented oils for each of his five daily prayers but NDOC allowed such oils only at weekly group services—"a paltry one out of 35 prayers per week." 23 F.4th at 1216. Because AR 810.2 prevented the inmate from "complying with his religious beliefs for 34 out of 35 prayers," this Court agreed that the policy imposed a substantial burden on his religious exercise. *Id*. And although NDOC generally allowed unscented oils, this Court deemed that option "immaterial" where the inmate's faith required scented oils. *Id*.

Chernetsky's situation is similar, yet worse. As in *Johnson*, AR 810.2 prevents Chernetsky from complying with his faith by refusing him the oils he needs; and NDOC's offer of a synthetic option cannot alleviate the burden on Chernetsky's religious practice since his faith permits only natural oils, and not baby oil or Prime Products oils that contain industrial chemicals. But making things even more burdensome, unlike the inmate in *Johnson* who was deprived of scented oil for private prayers

but could still use them at weekly group services, Chernetsky cannot use the oils his faith requires in any context—private or group worship.

NDOC's policy is a clear-cut substantial burden on Chernetsky's religious exercise under RLUIPA. Accordingly, Chernetsky has shifted the burden to NDOC to satisfy strict scrutiny. *Greene*, 513 F.3d at 988.[5]

## C. As in *Johnson*, NDOC's generalized and speculative concerns cannot satisfy strict scrutiny.

### 1. NDOC fails to connect its denial of Chernetsky's natural oils to its claimed security risks.

For a prison policy to pass muster under RLUIPA, the prison must provide "detailed evidence, tailored to the situation before the court" of a compelling interest in applying the challenged policy to the plaintiff; here, Chernetsky. *Holt*, 574 U.S. at 363. NDOC's evidence on any such interest in banning Chernetsky's access to natural oils—in any way, shape, or form—is neither detailed nor tailored. The lower court's one-paragraph disposition in favor of NDOC must therefore be reversed.

---

[5] The burden here stands in contrast to the three cases cited by the district court: (1) *Riggins*, 403 F. App'x at 295, where the inmate failed to show his faith required oils; (2) *Curry*, 2012 WL 968079, at *6, where the inmate failed to show the lack of oils substantially burdened his faith; and (3) *Blake*, 2016 WL 5660355, at *23, where the inmate similarly failed to show that a ban on scented oils was a substantial burden.

In support of its summary-judgment motion, NDOC depended on a three-page declaration by Acting Assistant Warden David Frobes to justify its ban on natural anointing oils. 2-ER-68–71. In that declaration, which the district court's opinion singularly relies on and adopts nearly verbatim, Frobes asserts that the possession of "scented oils" threatens prison safety because such oils: "are flammable under the right conditions"; may be used to mask the scent of drugs, create slippery surfaces, prevent cell extraction, or concoct alcohol and banned inks; would render empty vials available to hide banned substances; and may cause allergic reactions. 2-ER-69–70.[6]

But Frobes' supposed concerns cannot support the required detailed and particularized showing of a compelling interest arising from natural oils for four reasons described below: (1) NDOC fails to prove how the oils Chernetsky seeks are flammable or implicate NDOC's own flammability standard; (2) NDOC provides no evidence on the quantity of oils needed

---

[6] NDOC also attached to its summary-judgment motion a 2006 declaration by Dorothy Nash Holmes. 2-ER-38–46. This declaration not only relates to the unrevised AR 810—when the prison banned all religious oils—but Nash Holmes' sole assertion on the safety of oils merely tracks the supposed drug-masking concern in the Frobes declaration. *Compare* 2-ER-41 *with* 2-ER-70.

to implicate its alleged security risks; (3) the Frobes declaration concerns only "scented oils" and is therefore not particularized; and (4) NDOC's allowance of similar substances undercuts its supposed concerns.

First, Frobes theorizes that "scented oils" may be "flammable under the right conditions." 2-ER-69. But at no point does he describe what those conditions are, how often they occur, or if Chernetsky's requested oils are in fact flammable—with reference to flashpoints or otherwise. 2-ER-68–71. Indeed, neither Frobes nor the lower court distinguish natural and "scented oils" when it comes to flammability. 2-ER-69; 1-ER-7.

Under NDOC's own regulation, a material is deemed flammable enough to warrant special precautions only if it has a flashpoint of 100 degrees Fahrenheit or lower. *See* AR 443.[7] But neither NDOC nor the lower court mentions NDOC's standard on flammability, and NDOC provides no concrete evidence that the natural oils Chernetsky seeks would in fact implicate this standard. *See Davis v. Powell*, 901 F.Supp.2d 1196, 1206 (S.D. Cal. 2012) (relying on flashpoint evidence to determine if substance met prison's flammability standard).

---

[7] Appellant submits Administrative Regulations 443 and 750 on a motion for judicial notice filed concurrently with this brief.

Second, NDOC also fails to offer detailed evidence tailored to Chernetsky's request for natural oils when it comes to safety risks beyond flammability; nor, again, did the district court's opinion recite any such evidence. *Warsoldier*, 418 F.3d at 1000 (insisting on detailed proof tailored to inmate). For starters, this Court has since rejected in *Johnson* NDOC's generalized contraband-masking concern—and for scented oils, no less. 23 F.4th at 1217. Moreover, neither NDOC nor the district court indicates the amount, type, or manner of use or possession of oil that would make the floor slippery, prevent cell extraction, or produce alcohol and inks. *See id.* (emphasizing the need for concrete, detailed evidence). Further, the argument that empty vials can hide contraband also fails for lack of a particularized showing, much less a distinction between such a container here and those involved with other permissible substances. *Id.* at 1213, 1218 (describing permitted 14-ounce bottles and authorizing half-ounce vial of scented oils). Finally, NDOC speculates that allergic reactions are "possible," but it cites nothing in support. 2-ER-70.[8]

_____

[8] This Court's holding in *Johnson* that NDOC must provide scented oils in an inmate's cell also dooms the lower court's reliance on the West Virginia district court's finding in *Blake*, 2016 WL 5660355, at *23, concerning the drug-masking issues raised by the prison there.

27

Third, the Frobes declaration cannot support a particularized finding to justify denying natural oils to Chernetsky. RLUIPA requires courts "to scrutiniz[e] the asserted harm of granting the specific exemptions to particular religious claimants." *Holt*, 574 U.S. at 363 (internal quotation marks omitted). Frobes, however, nowhere mentions natural oils—much less Chernetsky's use of them. *See generally* 2-ER-68–71. Rather, Frobes discusses only "scented oils." 2-ER-69; *see also Johnson*, 23 F.4th at 1217 (emphasizing plaintiff's particular practice in evaluating a compelling interest). And even then, he uses words and phrases such as "may," "could," "under the right conditions," and "possible harm." 2-ER-69–70; *see Ramirez v. Collier*, 142 S.Ct. 1264, 1280 (2022) (rejecting as insufficient under RLUIPA speculative and hypothetical safety concerns).[9]

Fourth, NDOC's inability to explain the availability of other oils that implicate its alleged concerns—flammability, slippery surfaces, cell

---

[9] The fact that the Frobes declaration's concerns are identical to those in a declaration from another case—save the inmate, declarant, and requested items—further undercuts a showing of a particularized risk. *Compare Beraha v. Nevada*, 3:17-cv-366, 2020 WL 3949223, at *7-8 (D. Nev. Apr. 27, 2020) (citing declaration from Associate Warden David Drummond), *with* 2-ER-68–71 (Frobes declaration).

extraction, alcohol or tattoos, allergies, contraband, empty vials—further undercuts any compelling-interest showing here. AR 810.2 specifies, for example, that "[i]nmates can purchase . . . [synthetic] oils . . . through the institutional canteen." 2-ER-24. Moreover, NDOC permits baby oil. 2-ER-41. Unless there is a material safety difference between these oils—and NDOC fails to prove one here—NDOC cannot begin to claim a compelling interest in banning natural oils while allowing others. *See Holt*, 574 U.S. at 353 (noting that prison's interest in banning beards was compromised by lack of a corresponding policy on hair length); *see also Greene v. Teslik*, No. 21-2154, 2023 WL 2320767 at *3 (7th Cir. Mar. 2, 2023) (observing that if religious oils "were truly dangerous . . . we would expect to see a categorical ban of all forms of oil"). Neither NDOC nor the district court address this inconsistent treatment.

### 2. NDOC fails to connect its denial of Chernetsky's natural oils to its supposed administrative burdens.

Once again, prisons must provide "detailed evidence, tailored to the situation" for a court to find a compelling interest. *Holt*, 574 U.S. at 363. Conclusory, speculative, or generalized evidence is insufficient to meet RLUIPA's exacting standard. *Id.*; *see also Warsoldier*, 418 F.3d at 1001.

The Frobes declaration on which NDOC and the district court rely to justify the natural-oils ban on administrative grounds, however, offers only conclusory, speculative, and generalized reasons. Specifically, Frobes says natural oils could increase illegal bartering; overwhelm the mail-room staff with inspecting packages; saddle NDOC with the cost of returning unauthorized parcels; and tax prison officials with deciding the suitability of oils for each religion. 2-ER-70. But like its arguments about potential safety risks, NDOC's administrative arguments fail on closer inspection. So too, therefore, does the district court opinion that relied on Frobes in making its findings on administrability.[10]

Regarding bartering, NDOC gives no reason why natural anointing oils are more likely to be bartered than other items that inmates are permitted. Again, RLUIPA requires any supposed compelling interest to be proven "to the person." *Holt*, 574 U.S. at 363 (internal quotation marks omitted). NDOC has made no such showing on bartering when it comes to Chernetsky's request.

---

[10] Arguably, the district court made findings on administrability solely in its inapt *Turner* analysis. In its RLUIPA ruling, the court mentioned only a list of safety concerns. 1-ER-10. Thus, the court's lone possible reference to administrability was its "[a]s explained above" incorporation. *Id.*

As for mail-room staffing and package inspection or return, NDOC fails to explain how much of an added workload—if any—the staff would face or the amount of further costs the prison would incur. *See* 42 U.S.C. § 2000cc-3(c) (RLUIPA "may require a government to incur expenses"); *Shakur*, 514 F.3d at 889-90 (finding no compelling interest where accommodation was estimated to cost $1.5 million). Moreover, NDOC already has procedures to scan and inspect religious mail. 2-ER-44 (Nash Holmes declaration stating that "[r]eligious mail is treated no differently than regular mail"). And if any package poses safety problems, NDOC undertakes the cost of returning it to sender under AR 750. In other words, NDOC's mail concerns are not unique to the oils Chernetsky seeks and cannot serve as a compelling reason in any event. *See Shakur*, 514 F.3d at 891 (rejecting prison's objection to cost of providing religious meals to plaintiff where such meals are provided to other inmates).

Finally, NDOC's clergy-oversight objection is undercut by the fact that NDOC already conducts the sort of oversight it objects to here. As an alternative to direct mail orders, Chernetsky has proposed donation as an option. 2-ER-18. Donation could avoid the mail altogether and is a process on which NDOC already has a regulation for the chaplain and

31

Associate Warden to manage. *See* 3-ER-387 (authorizing chaplain and Associate Warden "to solicit, approve, and accept donations"). Moreover, the chaplain already reviews the suitability of religious items—including oils—for each faith group in the prison. 2-ER-102. To avoid the marginal, if any, impact of Chernetsky's requested accommodation on these processes is not a compelling interest. *Holt*, 574 U.S. at 368 (rejecting an additive administrative burden as a compelling interest).

### D. NDOC's ban on natural oils also fails because it is not the least restrictive means for prison safety or administrability.

RLUIPA's independent least-restrictive-means condition is simple and "exceptionally demanding": if the prison could adopt a less restrictive policy without sacrificing its alleged interests, it must do so. *Holt*, 574 U.S. at 353, 364-65 (internal quotation marks omitted). NDOC can make no such showing here, nor did the district court make any RLUIPA findings on alternative means.

As described below, NDOC's ban on natural oils fails RLUIPA's least-restrictive-means test in at least three ways that demand reversal: (1) NDOC cannot show it is unable to satisfy its alleged compelling interests by regulating—not banning—natural oils; (2) NDOC

cannot justify its favorable treatment of items that pose the same supposed risks as natural oils; and (3) NDOC cannot explain away the fact that it allowed natural oils in its prisons for more than 30 years.

First, Chernetsky proposed two less restrictive policies that would satisfy NDOC's alleged compelling interests. In one, Chernetsky asked NDOC to allow donations of oils through its Group Religious Property program. 2-ER-18. After all, NDOC maintains that under current guidelines inmates are allowed to use synthetic oils in group settings; the total amount cannot exceed six one-ounce vials; and prisoners can use the oils only at approved times. 2-ER-49. Yet, NDOC does not show that accommodating Chernetsky under this same approach would fail to control for safety concerns like fires, concealment of drugs, and illegal bartering. *See Nance*, 700 F. App'x at 632 ("In the chaplain's custody, the oils could not be used to hide the scent of contraband.").

Alternatively, Chernetsky proposed obtaining natural oils from an approved outside vendor. 2-ER-94–95. Upon arrival, the oils could be inspected under NDOC's existing policy for outside items. *Id.*; AR 750. Inside the facility, moreover, any security concerns would be diminished by the threat of punishment—such as revocation of access—if the oils

were somehow misused. 2-ER-95; *see also Holt*, 574 U.S. at 369 (noting that prisons may "withdraw an accommodation if the claimant abuses the exemption"). NDOC has stated it would not approve a particular vendor of natural oils, AzureGreen, to ship items to Nevada prisons due to a contract dispute, but NDOC fails to show that this dispute implicates safety or administrability concerns. 2-ER-99.

Second, NDOC does not explain how or why it permits analogous items but not natural oils. For instance, NDOC says it is worried about "slippery surfaces" and cell extraction. 2-ER-70. But it allows prisoners to own other presumably slippery substances, like baby oil. 2-ER-41. NDOC also says natural oils could mask the scent of drugs. 2-ER-70. Yet prisoners can purchase air fresheners for their cells. 2-ER-17; *see also Johnson*, 23 F.4th at 1217 (emphasizing NDOC's allowance there of Irish Spring soap, Tide laundry detergent, Bounce dryer sheets, cocoa butter lotion, and various deodorant scents). Lastly, NDOC claims natural oils are "flammable under the right conditions." 2-ER-69. But NDOC fails to explain how a given oil it could somehow prove is flammable would not be manageable under its existing rules—including those for flammable items it permits inmates to use. *Id.*; *see also* 2-ER-100; AR 443. These

inconsistencies are a "sure sign" that NDOC could maintain its alleged compelling interests with a "narrower ordinance[]." *Johnson*, 23 F.4th at 1217-18.

Third and finally, NDOC fails to explain why it allowed inmates to possess natural oils for decades. No one disputes that AzureGreen sold natural oils to NDOC inmates like Chernetsky. 2-ER-98. And the record shows only that AzureGreen stopped selling such oils because of a contract dispute—not for safety or security reasons. *Id.* This history dispels any argument that an outright ban is the least restrictive alternative. *Ramirez*, 142 S.Ct. at 1279-80 (rejecting state prison's ban on audible prayer at executions, in part because that practice was "historically and routinely allowed" there).

## II. THIS COURT SHOULD REVERSE AND REMAND FOR ENTRY OF A JUDGMENT THAT GUARANTEES CHERNETSKY NATURAL ANOINTING OILS. IN THE ALTERNATIVE, IT SHOULD REMAND FOR TRIAL.

For the reasons detailed above, this Court should reverse the district court's order of summary judgment for NDOC in its denial of natural anointing oils to Chernetsky. From there, and given NDOC's repeated failure to make a detailed and particularized showing of a compelling interest or discount less restrictive alternatives, this Court

should bring this years-long dispute to an end. Accordingly, we ask the Court to accompany its reversal with a remand order to enter summary judgment for Chernetsky and grant him the natural oils he requires to practice his faith. Only in the alternative should this Court remand for trial.

Despite this case's winding 17-year history, the record is clear: Chernetsky has shown that NDOC's ban on natural oils significantly infringes on his religious exercise, while NDOC has not and cannot satisfy its burden of proving its policy is the least restrictive means of serving a compelling interest. At a minimum, NDOC has failed to show a principled difference between the synthetic oils it permits and the natural oils it denies Chernetsky. *See Holt*, 574 U.S. at 369 (finding the prison's prohibition on facial hair violated RLUIPA and remanding for further proceedings consistent with that finding). Further litigation would only repeat this case's Sisyphean cycle of briefing, appeal, reversal, and remand. This Court should therefore rule, once and for all, that NDOC must provide Chernetsky access to natural anointing oils.

In the alternative, the evidence at least indicates NDOC should not be able to avoid trial. As this Court has observed, "[o]nly a careful

analysis of a fully developed record can justify the burdening of an inmate's religious rights." *Shakur*, 514 F.3d at 893. At most, NDOC's case rests on conclusory or generalized affidavits that are insufficient to deny Chernetsky his requested natural oils on summary judgment. *See id.* at 890-91 (rejecting a prison's conclusory evidence as insufficient to meet its burden under RLUIPA). Therefore, at the very least, this Court should reverse and remand for trial.

## CONCLUSION

Five years ago and after more than a decade of litigation, this Court remanded this case to the district court to resolve a single outstanding matter: Chernetsky's right under RLUIPA to the natural anointing oils required by his faith. But because the lower court based its cursory summary-judgment ruling for NDOC on concerns over scented oils that this Court has since permitted under *Johnson*, that ruling cannot stand.

Moreover, because NDOC did not and cannot demonstrate that its denial of these oils is the least restrictive way of serving a compelling interest, this Court should not only reverse but also remand for entry of judgment in Chernetsky's favor and finally guarantee him the oils he needs to practice his faith.

Date:   March 21, 2023                    Respectfully submitted,

                                          STANFORD LAW SCHOOL
                                          RELIGIOUS LIBERTY CLINIC

                                   By:    */s/ James A. Sonne*

                                          *Attorneys for Appellant*
                                          Anthony Chernetsky

**ADDENDUM**

### 42 U.S.C § 2000cc–1.  Protection of religious exercise of institutionalized persons

(a) General rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

(b) Scope of application

This section applies in any case in which—

(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or (2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

1a

# STATEMENT OF RELATED CASES
# PURSUANT TO CIRCUIT RULE 28-2.6

The undersigned attorney states the following: I am unaware of any related cases currently pending in this Court.

Dated: March 21, 2023

*/s/ James A. Sonne*
James A. Sonne

*Attorney for Appellant*
Anthony Chernetsky

**CERTIFICATE OF COMPLIANCE**

The foregoing **Appellant's Opening Brief** complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains no more than 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief contains a total of 7402 words. This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6), and was prepared in 14-point Century Schoolbook, a proportionally spaced typeface, using Microsoft Word. Finally, the electronic brief was subject to a virus scan and no virus was detected prior to its submission.

Dated: March 21, 2023       */s/ James A. Sonne*
                                        James A. Sonne

                                        *Attorney for Appellant*
                                        Anthony Chernetsky

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing document, **Appellant's Opening Brief**, with the United States Court of Appeals for the Ninth Circuit, using the CM/ECF system. I further certify that all parties, through their counsel of record, are registered as ECF filers and that they will be simultaneously served via Notice of Docketing Activity (NDA).

Dated: March 21, 2023

*/s/ James A. Sonne*
James A. Sonne

*Attorney for Appellant*
Anthony Chernetsky