No. 21-16540

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANTHONY CHERNETSKY,
*Plaintiff-Appellant,*

v.

STATE OF NEVADA, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Nevada
No. 3:06-cv-00252-RCJ-WGC
Hon. Robert C. Jones

## APPELLANT'S REPLY BRIEF

James A. Sonne (supervisor)
Zeba A. Huq (supervisor)
Caleb Blackerby (certified law student)
Collin Fredricks (certified law student)
Jack Gleiberman (certified law student)
STANFORD LAW SCHOOL
RELIGIOUS LIBERTY CLINIC
559 Nathan Abbott Way
Stanford, CA 94305
Telephone: (650) 723-1422
Facsimile: (650) 723-4426
jsonne@law.stanford.edu

Samuel Weiss
Oren Nimni
RIGHTS BEHIND BARS
416 Florida Avenue, N.W.
Suite 26152
Washington, D.C. 20001
Telephone: (202) 455-4399
sam@rightsbehindbars.org

*Attorneys for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................iii

INTRODUCTION ................................................................................ 1

I.    THIS CASE IS NOT MOOT BECAUSE ITS FACTUAL
      PREDICATE PERSISTS: NDOC'S RELIGIOUS-OILS
      POLICY FORBIDS THE NATURAL OILS CHERNETSKY'S
      FAITH REQUIRES .......................................................................... 4

      A.   NDOC's mootness argument fails because it depends on
           a forfeited challenge to Chernetsky's complaint .................... 4

      B.   The record makes clear that Chernetsky's claim for
           natural anointing oils presents a live dispute........................ 7

II.   NDOC'S CATEGORICAL BAN ON NATURAL OILS
      CANNOT SURVIVE STRICT SCRUTINY UNDER RLUIPA...... 12

      A.   As the district court found, it remains undisputed that
           NDOC's ban on natural oils substantially burdens
           Chernetsky's religious exercise ............................................ 12

      B.   The only interests NDOC still asserts—flammability
           and administrative burdens—are speculative and
           unsupported by the record.................................................... 14

           1.   NDOC has rightly abandoned nearly all the
                alleged compelling interests it argued below .............. 14

           2.   NDOC has failed to show that natural oils are
                flammable, much less that Chernetsky's use of
                them in worship poses safety risks............................. 16

           3.   NDOC has failed to show that allowing natural
                oils would impose unworkable administrative
                burdens........................................................................ 23

C.     In any event, a total ban on natural oils is not the least restrictive means for furthering NDOC's interests.............. 26

CONCLUSION ........................................................................ 31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*,
713 F.3d 1187 (9th Cir. 2013) ............................................................ 7

*Banik v. Ybarra*,
828 F. App'x 214 (5th Cir. 2020) ..................................................... 6

*Chandler v. Miller*,
520 U.S. 305 (1997) .......................................................................... 10

*City of Boerne v. Flores*,
521 U.S. 507 (1997) .......................................................................... 26

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019) ............................................................ 7

*Davis v. Powell*,
901 F. Supp. 2d 1196 (S.D. Cal. 2012) ......................................... 17

*Friends of the Earth, Inc v. Laidlaw Env't Servs. Inc.*,
528 U.S. 167 (2000) .......................................................................... 10

*Garcia v. Lawn*,
805 F.2d 1400 (9th Cir. 1986) .......................................................... 4

*Garner v. Kennedy*,
713 F.3d 237 (5th Cir. 2013) ........................................................... 25

*Greene v. Solano Cnty. Jail*,
513 F.3d 982 (9th Cir. 2008) ..................................................... 12, 13

*Holt v. Hobbs*,
574 U.S. 352 (2015) ....................... 13, 14, 15, 18, 19, 22, 23, 26, 30

*Johnson v. Baker*,
23 F.4th 1209 (9th Cir. 2022) ......... 1–3, 5, 6, 12–14, 16, 17, 21, 26, 28

iii

*Karuk Tribe of Cal. v. U.S. Forest Serv.*,
    681 F.3d 1006 (9th Cir. 2012) ............................................................ 4

*Mont. Wilderness Ass'n v. U.S. Forest Serv.*,
    655 F.2d 951 (9th Cir. 1981) ............................................................. 7

*Moussazadeh v. Tex. Dep't of Crim. Just.*,
    703 F.3d 781 (5th Cir. 2012) ............................................................ 25

*Nance v. Miser*,
    700 F. App'x 629 (9th Cir. 2017) .......................................... 22, 24, 29

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993) ........................................................................... 7

*Ramirez v. Collier*,
    142 S. Ct. 1264 (2022) ............................................................... 16, 22

*Shakur v. Schriro*,
    514 F.3d 878 (9th Cir. 2008) ........................................................... 25

*Smith v. Marsh*,
    194 F.3d 1045 (9th Cir. 1999) ........................................................... 6

*Thomas v. Ponder*,
    611 F.3d 1144 (9th Cir. 2010) ........................................................... 8

*Walker v. Beard*,
    789 F.3d 1125 (9th Cir. 2015) ................................................... 8, 9, 10

*Walker v. Sumner*,
    917 F.2d 382 (9th Cir. 1990) ..................................................... 17, 23

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) ............................................... 26, 27, 31

*Williams v. Annucci*,
    895 F.3d 180 (2d Cir. 2018) ............................................................ 12

**Statutes**

28 U.S.C. § 1653 ............................................................ 10

42 U.S.C. § 2000cc-1(a) ................................................ 12, 13, 14

42 U.S.C. § 2000cc-3(c) ................................................ 25

42 U.S.C. § 2000cc-3(g) ................................................ 12

**Rules and Regulations**

9th Cir. R. 30-1.2(c) ...................................................... 9

NDOC AR 260 ............................................................ 25, 29, 31

NDOC AR 411 ............................................................ 29

NDOC AR 443 ............................................................ 17

NDOC AR 711.1 .......................................................... 25, 31

NDOC AR 750 ............................................................ 26

NDOC AR 810 ............................................................ 4, 5, 7, 8, 21

NDOC AR 810.2 .......................................................... 5, 7, 10, 11, 12, 14

NDOC AR 810.2 (2023) ................................................ 10, 15, 27, 28

# INTRODUCTION

In 2004, the Nevada Department of Corrections ("NDOC") adopted a policy that banned a crucial practice of inmate Anthony Chernetsky's faith, and one he had engaged in for years without incident: anointment with natural oils. Although NDOC has since amended its religious-oils policy after being rebuked by this Court in *Johnson v. Baker*, it continues to forbid natural oils. And NDOC has failed to show that this ban on natural oils—of any kind or amount, and regardless of how they are obtained, used, or stored—can satisfy strict scrutiny under RLUIPA.

When this case was last on appeal in 2017, this Court suggested that an amendment that year to NDOC's religious-oils policy might permit the "natural anointing oils" which Chernetsky's faith requires. 2-ER-149. But rather than dismissing his claim to such oils, the panel remanded to the district court to "determine whether there is still a dispute and, if so, to adjudicate it based on the [amended policy]." 2-ER-150. Unfortunately for Chernetsky, NDOC insisted its policy continues to forbid the natural oils he needs, and the district court granted summary judgment to NDOC on his RLUIPA challenge to that ban.

On appeal to this Court once more, NDOC makes little effort to defend the district court's analysis; rather, it concedes that "Chernetsky correctly points to some flawed reasoning" below. Answering Br. 6. Rightly so. As detailed in our opening brief, the lower court's analysis spends all but one paragraph on the wrong legal test (*Turner*); relies on inapposite cases; makes no distinction between natural and synthetic oils; ignores that NDOC allows substances posing similar supposed risks; fails to address alternatives short of a ban; and focuses solely on scented oils, which NDOC now permits after this Court's decision in *Johnson*.

Seeking to salvage the judgment, NDOC instead advances two lines of argument—one procedural, the other substantive. Both fail. First, NDOC declares that Chernetsky's religious-oils claim has been "moot for years" because of its 2017 policy change. Answering Br. 8. But NDOC's purported mootness argument is simply a disguised challenge to Chernetsky's 2006 pro se complaint, a challenge that NDOC failed to raise below and thus forfeited. What's more, NDOC's argument flies in the face of this Court's remand order, the district court's follow-on proceedings, and the parties' litigation conduct—all of which were premised on the persisting issue of whether NDOC was willing to meet

Chernetsky's need for natural oils. In effect, NDOC is talking out of both sides of its mouth: it tells Chernetsky he can't have the oils he needs, while it tells this Court there's no longer a live dispute because it has given Chernetsky what he asked for. Because NDOC's amended policy fails to address the problem with its original policy, this case is not moot.

As for its substantive argument, NDOC abandons the bulk of the reasons the district court offered for its judgment. Again, rightly so— these reasons apply equally to natural oils and the oils that *Johnson* and other intervening authority have forced NDOC to allow. Instead, NDOC clings to two interests: flammability and administrative burdens.

But NDOC fails to meet RLUIPA's famously strict demand for detailed, tailored evidence that Chernetsky's use of natural oils raises a flammability risk, or that allowing such oils poses a distinct administrative burden. Rather, NDOC continues to stake its case on a speculative, recycled declaration about "scented oils" (which it now allows) and bare assertions to this Court that the risks of allowing natural oils are "plain to see" and "obvious."

Regardless, NDOC cannot satisfy strict scrutiny for an independent reason: it did not consider and reject less restrictive measures. Indeed,

NDOC fails to explain why myriad options short of a ban—regulations on quantity, use, vendors, etc.—would not address its concerns.

This Court should reverse and remand for entry of a judgment that finally guarantees Chernetsky the natural oils he needs for worship.

## I. THIS CASE IS NOT MOOT BECAUSE ITS FACTUAL PREDICATE PERSISTS: NDOC'S RELIGIOUS-OILS POLICY FORBIDS THE NATURAL OILS CHERNETSKY'S FAITH REQUIRES.

### A. NDOC's mootness argument fails because it depends on a forfeited challenge to Chernetsky's complaint.

The central question in determining mootness is "not whether the precise relief sought at the time the [action] was filed is still available," but "whether there can be any effective relief." *Garcia v. Lawn*, 805 F.2d 1400, 1403 (9th Cir. 1986). Accordingly, "[t]he party asserting mootness bears a heavy burden; a case is not moot if *any* effective relief may be granted." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (internal quotation omitted).

NDOC argues this case is moot because the policy challenged by Chernetsky's 2006 complaint—AR 810's ban on all anointing oils—was amended in 2017 to allow some oils. Answering Br. 9–10. However, this argument depends entirely on the mistaken premise that Chernetsky's

claim is frozen in time—in other words, that the claim can reach no further than the challenge to NDOC's old policy as it was articulated in his 2006 pro se complaint. Answering Br. 9 (framing claim as limited to challenging AR 810); *see* 3-ER-414 (complaint stating "AR 810 prohibits the religious and/or spiritual use of anointing oils by practicing Wiccans.").

To begin with, NDOC forfeited this argument on the scope of Chernetsky's complaint by failing to raise it below. Indeed, this Court in *Johnson v. Baker* rejected on forfeiture grounds a similar mootness contention made by NDOC. 23 F.4th 1209, 1214 n.2 (9th Cir. 2022). There, NDOC argued that the plaintiff's challenge to NDOC's old religious-oils policy was moot, and that any challenge to the new policy would accordingly require an amendment to the complaint. Appellant's Opening Br., *Johnson*, 23 F.4th 1209 (No. 20-17202), ECF No. 12 at 26.

This Court rejected that argument, holding that the dispute was not moot because AR 810.2 failed to resolve the "core of" the claim. *Johnson*, 23 F.4th at 1214 n.2. It also held that "any error by the district court in allowing Johnson to proceed without amending his complaint

[was] forfeited because Nevada failed to raise that issue before the district court." *Id.*

So too here. Even assuming NDOC is correct on the scope of Chernetsky's complaint—it is not—NDOC should have raised its objection to the district court, which could have then granted Chernetsky any needed leave to amend. Non-jurisdictional arguments like this one must be raised below. *See Banik v. Ybarra*, 828 F. App'x 214, 215 n.2 (5th Cir. 2020) ("As to any non-jurisdictional aspect of appellants' mootness argument, we decline to address it for failure to raise the issue below."). In failing to do so, NDOC forfeited this argument. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (reciting general rule that arguments not raised below are forfeited on appeal).

Furthermore, and as detailed in the next section, NDOC's so-called mootness challenge fails for several additional reasons: Chernetsky's challenge to NDOC's categorical ban on anointing oils necessarily includes a challenge to its narrower ban on the natural anointing oils he requires; the history of this pro se lawsuit confirms Chernetsky's need for natural oils and the inadequacy of the oils available under AR 810.2; and

everyone agrees that the dispute's factual predicate remains— NDOC interprets AR 810.2 to forbid the oils Chernetsky needs.

## B. The record makes clear that Chernetsky's claim for natural anointing oils presents a live dispute.

A change in policy moots a legal challenge only to the extent it "eliminates the aspects of the old [policy] which gave rise to the challenge." *Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 655 F.2d 951, 958 (9th Cir. 1981). Put another way, the case remains live where the new policy "disadvantages [the plaintiff] in the same fundamental way" such that the "challenged conduct continues." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 & n.3 (1993); *see also Cuviello v. City of Vallejo*, 944 F.3d 816, 824–25 (9th Cir. 2019) (rejecting mootness where new ordinance failed to eliminate harm); *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (holding similarly in state-agency context).

*Chernetsky's Claim*

When this litigation began in 2006, AR 810 banned all anointing oils—including the natural oils required by Chernetsky's faith. 3-ER-381 (AR 810: "No oils are allowed except regular baby oil sold in the

7

canteen."); 3-ER-414 (Complaint: "AR 810 prohibits the religious and/or spiritual use of anointing oils by practicing Wiccans."). AR 810's categorical prohibition of all oils thus made it unnecessary for Chernetsky to specify the subset of oils he needed. His 2006 pro se complaint, which challenged NDOC's broad ban, necessarily encompasses the conflict that persists today over its narrower but equally burdensome ban. Moreover, Chernetsky did not have a crystal ball when he was drafting his 2006 complaint: he can't be expected to have anticipated policy changes that NDOC would make a decade later.

Even so, Chernetsky has emphasized throughout this case that his challenge centers on natural oils. This record evidence is especially compelling given this Court's duty to interpret pro se inmate pleadings "liberally." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). In *Walker v. Beard*, for example, this Court allowed a pro se inmate to go beyond the pleadings to refine his complaint's "general theory and nucleus of facts" about a limit on religious practice. 789 F.3d 1125, 1133-34 (9th Cir. 2015). The Court even held that the inmate's appellate brief served to "clarify[]" his "broad initial claim." *Id.*

As in *Walker*, the record makes clear that Chernetsky has always sought access to the natural oils his faith requires. For example, Chernetsky insisted in opposing NDOC's 2006 motion to dismiss that baby oil was "not feasible" because it "ha[d] a chemical agent added to it." 1-FER-232.[1] Likewise, in his 2013 summary-judgment motion, Chernetsky repeated his need for "essential/anointing oils."[2] 2-ER-180. And in his opening and reply briefs on the last appeal to this Court in 2017, Chernetsky similarly framed the conflict as one over the "natural oils" banned by NDOC. 1-FER-139 (opening); 1-FER-113–17 (reply).

What's more, NDOC claims no prejudice on the matter. *See Walker*, 789 F.3d at 1134 (stressing lack of prejudice in affording liberal construction to pro se complaint). Nor could it—NDOC has understood for years that Chernetsky seeks natural oils. *See infra* at 11. This Court should accordingly construe the complaint to encompass what this dispute has always been about: Chernetsky's need for natural oils.

---

[1] Further excerpts of record are needed to rebut NDOC's mootness argument, which it did not raise in the district court. 9th Cir. R. 30-1.2(c).

[2] The parties refer interchangeably to natural oils and essential oils, in contrast to synthetic oils. *See* 2-ER-180 & 1-FER-207 (Chernetsky); 1-FER-20–21 & 1-FER-9 (NDOC).

Indeed, abandoning this case at this late stage—just for Chernetsky to start all over again with a new complaint—would prove "more wasteful than frugal." *Friends of the Earth, Inc v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 192–93 (2000) (recognizing that judicial economy impacts mootness analysis); *see also Walker*, 789 F.3d at 1134 (refusing to require plaintiff "to institute a new action" where there was no prejudice).

Alternatively, if for some reason it were deemed necessary, this Court could, under 28 U.S.C. § 1653, authorize an amendment to the complaint to memorialize the litigation history described herein. *See Chandler v. Miller*, 520 U.S. 305, 313 n.2 (1997) (citing 28 U.S.C. § 1653 in rejecting mootness argument).

*NDOC's Policy Change*

In 2017, and during the pendency of the last appeal, NDOC altered its religious-oils policy by adopting AR 810.2, which allows "[n]on-flammable, non-toxic anointing oils." 1-FER-70 (2017 version).[3] And although this Court suggested that AR 810.2 might resolve Chernetsky's

---

[3] AR 810.2 has since been amended again, but the "non-flammable, non-toxic" limitation remains. 2-ER-48–49 (2019 version) & AR 810.2 (2023 version).

need for "natural anointing oils," it declined to dismiss the case. 2-ER-149–50. Instead, the panel remanded for the district court to "determine whether there is still a dispute and, if so, to adjudicate it based on the current provisions." 2-ER-150.

On remand, NDOC didn't budge on natural oils: it interpreted AR 810.2's "non-flammable, non-toxic anointing oils" provision to permit synthetic oils but not the "natural" oils Chernetsky "use[s] during Wiccan religious ceremonies." 1-FER-4–5 (written notice); *see also* 1-FER-8–9 (NDOC letter to Chernetsky); 1-FER-20–21 (status hearing). For his part, Chernetsky repeated his need for natural oils and reiterated that using synthetic oils would violate his faith. *See* 1-FER-21–23 (status hearing); 1-FER-11 (written notice). The district court acknowledged as much in its ruling, stating that "[t]he parties agree that Plaintiff is a sincere Wiccan and that he was denied access to the anointing oils that Plaintiff claims is [sic] necessary for the practice of his religion." 1-ER-7 (ruling). Even on appeal, NDOC concedes that the parties faced a "dispute" below that they "could not resolve." Answering Br. 5.

In sum, AR 810.2 diverges from the policy Chernetsky originally challenged only in its treatment of synthetic oils; natural oils continue to

be prohibited. To borrow this Court's observation in *Johnson*, whether Chernetsky "has access to [one type of] oil is immaterial when his faith requires [another type of] oil." 23 F.4th at 1216. The challenged harm thus remains and the case is live. *See id.* at 1214 n.2 (rejecting mootness based on the adoption of AR 810.2 because the court could "still grant relief"); *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) (rejecting mootness challenge in a RLUIPA religious-diet case where "the new menu, like the old menu, includes items [the inmate] cannot eat").

## II. NDOC'S CATEGORICAL BAN ON NATURAL OILS CANNOT SURVIVE STRICT SCRUTINY UNDER RLUIPA.

### A. As the district court found, it remains undisputed that NDOC's ban on natural oils substantially burdens Chernetsky's religious exercise.

RLUIPA protects inmate religious exercise "to the maximum extent permitted . . . by the Constitution." 42 U.S.C. § 2000cc-3(g). To that end, the statute prohibits a prison from substantially burdening such exercise unless it can satisfy strict scrutiny. *See* 42 U.S.C. § 2000cc-1(a).

Under RLUIPA, an inmate must first show that the challenged policy substantially burdens his religious exercise. *Johnson*, 23 F.4th at 1214. And this Court has held that "an outright ban on a particular religious exercise" amounts to a "substantial burden." *Greene v. Solano*

*Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008). It makes no difference under RLUIPA whether the inmate can exercise his faith in other ways. *Holt v. Hobbs*, 574 U.S. 352, 361–62 (2015). Once an inmate shows a substantial burden, the prison must then satisfy strict scrutiny: it must prove its policy is the "least restrictive means" of advancing a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

Here, the first step of the RLUIPA analysis is not in dispute. The district court found that "[t]he parties agree that [Chernetsky] is a sincere Wiccan and that he was denied access to the anointing oils that [he] claims [are] necessary for the practice of his religion." 1-ER-7. And on appeal, NDOC nowhere contends that Chernetsky failed to meet his burden. *See* Answering Br. 7–8. Indeed, NDOC's outright ban on natural oils substantially burdens Chernetsky's religious exercise as a matter of law. *Greene*, 513 F.3d at 988. It does not matter that synthetic oils are available; Chernetsky's faith requires natural ones.

*Johnson* illustrates this point. In that case, this Court held that the very religious-oils policy at issue here—AR 810.2, as interpreted by NDOC—imposed a substantial burden on religious exercise. *Johnson*, 23 F.4th at 1216. The inmate there required scented prayer oil for his

religious practice in his cell, but NDOC deemed AR 810.2 to allow only unscented oil. *See id.* at 1212–13. In holding that this approach substantially burdened the inmate's religious exercise, moreover, this Court made clear that it did not matter that the inmate had access to one type of oil; his faith required another. *See id.* at 1216.

Given that AR 810.2 substantially burdens Chernetsky's religious exercise, NDOC must satisfy strict scrutiny. As explained in our opening brief and below, it cannot do so.

### B. The only interests NDOC still asserts—flammability and administrative burdens—are speculative and unsupported by the record.

#### 1. NDOC has rightly abandoned nearly all the alleged compelling interests it argued below.

To satisfy strict scrutiny, NDOC must first prove a compelling government interest. 42 U.S.C. § 2000cc-1(a). Although prison-security concerns can rise to the level of a compelling interest, courts do not grant "unquestioning deference" to the state on such matters. *Holt*, 574 U.S. at 364. Instead, RLUIPA requires courts to "scrutiniz[e] the asserted harm of granting specific exemptions." *Id.* at 363 (internal quotation omitted). And it's not enough for an interest to be compelling in the abstract: the

prison must demonstrate a compelling interest in enforcing the policy against "the particular claimant." *Id.* at 362–63.

At the district court, NDOC proposed a grab bag of reasons why it could not allow "scented oils": contraband-scent-masking; flammability; allergies; illegal bartering; inspection costs; and concerns that inmates would lubricate themselves to avoid cell extraction, make the floors slippery, or manufacture tattoo ink or alcohol. 2-ER-69–70 (Frobes Declaration). Even though these reasons concerned only "scented oils," the district court nonetheless considered them and deemed some of them compelling. *See* 1-ER-10 ("These oils can be used to conceal illicit substances, used in prison tattoos, used to make prison alcohol, and used to prevent cell extractions.").

On appeal, however, NDOC has abandoned nearly all the interests it asserted at the district court—including the ones the court discussed in its RLUIPA analysis. It's understandable why: NDOC now allows personal possession of synthetic scented oils. *See* AR 810.2 (2023) at 2. NDOC can thus no longer rely on generic, scented-oil concerns— contraband-masking, allergies, bartering, cell extraction, slipperiness, and tattoo ink/alcohol-making—where it has made no showing that

natural oils implicate these concerns in a way that the now-permitted oils do not.

That leaves NDOC with just two purported interests on appeal: (1) flammability risks, and (2) administrative burdens. *See* Answering Br. 11–14 (asserting only these interests). As explained below, these justifications—like the ones rejected in *Johnson*—are not supported by the record and do not qualify as compelling interests under RLUIPA.

> **2.** **NDOC has failed to show that natural oils are flammable, much less that Chernetsky's use of them in worship poses safety risks.**

NDOC's flammability argument fails for two independent reasons: (1) NDOC has not shown that the natural oils Chernetsky seeks are flammable; and (2) even if it could, NDOC has not shown that Chernetsky's use of the oils in worship poses a safety risk.

*First*, NDOC has provided no evidence that the natural anointing oils Chernetsky has requested are flammable. *See Ramirez v. Collier*, 142 S. Ct. 1264, 1280 (2022) (ordering prison to provide religious accommodation where "there [was] no indication in the record" to support the government's "conjecture" about supposed risks).

The only evidence NDOC cites for flammability is the Frobes Declaration, which states that "[s]cented oils are flammable under the right conditions." 2-ER-69. As described in our opening brief, Frobes's eight-word assertion is conclusory and cites no support; among other things, Frobes fails to reference NDOC's own flammability regulations, which set flashpoints at which NDOC considers substances "flammable." *See* AR 443 (flammability regulation); *see also Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990) ("Prison authorities cannot rely on general or conclusory assertions to support their policies."); *Davis v. Powell*, 901 F. Supp. 2d 1196, 1206, 1235 (S.D. Cal. 2012) (relying on flashpoint evidence to determine if substance met prison's flammability standard).

But more fundamentally, Frobes's statement nowhere mentions natural oils. He discusses only "scented oils," which NDOC allows inmates to individually possess post-*Johnson*. 2-ER-69.[4] More specifically, NDOC now allows scented *synthetic* oils but bans scented *natural* oils. *See* 1-FER-9 (NDOC letter to Chernetsky). To prove a

---

[4] The reference to "scented" oils in the Frobes Declaration appears to be a holdover from the *Beraha* case, where NDOC used a near-identical declaration—there, by Associate Warden Drummond—to support its denial of scented oils. *See* Drummond Decl., *Beraha v. Nevada*, No. 17-cv-00366 (D. Nev. Apr. 27, 2020), ECF No. 119 at 162–63 (Ex. L at 3–4).

compelling interest, therefore, NDOC must show that natural oils are distinctly flammable in a way that synthetic oils are not. But Frobes's claim that "scented oils may be flammable" does not speak to this issue. NDOC nowhere addresses these deficiencies in its brief; it merely declares that Chernetsky requests "flammable oil." Answering Br. 12.

Worse yet, NDOC has not even tried to tie its flammability concerns to the specific oils Chernetsky requested, via flashpoints or otherwise. *See Holt*, 574 U.S. at 363 (requiring evidence tailored to the "particular context"). Chernetsky has asked for specific types of natural oil, including lavender, rose, and cedar. 2-ER-95. NDOC is silent on these oils.

In lieu of affirmative evidence, NDOC says that a settlement letter Chernetsky wrote "suggests that he does not disagree with the premise that the oils he desires are flammable." Answering Br. 14–15. Not so. Chernetsky wrote that letter in response to the district court's instruction to provide NDOC a list of "nontoxic, nonflammable oils" he could use in worship. 1-FER-25–26 (status conference). After responding with a list of oils, Chernetsky went on to further assure NDOC that "[n]one of these oils are toxic in nature nor are they any more volatile than the mineral oil contained in baby oil or other products sold in the canteen." 2-ER-94.

And only then did he add "we do not use anointing oils in a combustible manner." 2-ER-95.

None of this "suggests" that the requested oils are flammable; if anything, the letter does the opposite. Chernetsky first says that the oils are *not* more dangerous than the baby oil NDOC has always allowed. And then he says his use of the oils would *not* implicate flammability. Chernetsky nowhere concedes the oils he seeks are flammable. Moreover, the letter must be read in the context of the court's request for a list of "nontoxic, nonflammable oils." 1-FER-25–26.

Besides, and as explained below, none of NDOC's conjecture about flammability can support a total ban on natural oils where it failed to consider less restrictive regulations. *See infra* at 27–30.

*Second*, even if NDOC had shown that the requested natural oils are flammable, it has not demonstrated that Chernetsky's use of them in worship creates a safety risk. Again, RLUIPA requires the government to demonstrate a compelling interest in enforcing the law against "the particular claimant." *Holt*, 574 U.S. at 363. In light of Chernetsky's method and history of worship, NDOC cannot do so.

NDOC's answering brief argues that it cannot allow Chernetsky to use natural oils in worship because he's allowed to worship with fire, and it would be unsafe "to mix flammable oil and open fire"—whether in individual or group worship. Answering Br. 14. This, of course, assumes that natural oils are flammable. But even putting that aside, this argument breaks down upon closer examination.

For starters, the ceremonial fire NDOC has approved for a number of faith groups is already subject to strict guidelines and supervision. NDOC has authorized "a small, contained ceremonial fire" that can be used only "under the watchful eye of a correctional officer in a nearby tower." 2-ER-44; *see also* 1-FER-55 (NDOC regulation allowing earth-based groups to use "a small worship fire").

Moreover, Chernetsky needs just a few drops of oil for worship. To drive this home, Chernetsky repeatedly pointed NDOC to his sacred text, which indicates that the oils are used to anoint the body and are measured in drops. *See, e.g.*, 2-ER-142 (Chernetsky referring to list of oils in his scripture); 2-ER-136 (scripture listing oils and specifying the number of drops needed for worship). NDOC has offered no evidence that such a small amount of oil creates a safety risk—either by Chernetsky or

anyone else worshiping with him. *See Johnson*, 23 F.4th at 1217 (government failed strict scrutiny where it "did not present detailed evidence on the quantity needed" to "cover the smell of contraband" (internal quotation omitted)).

NDOC's safety concerns also cannot be squared with the years Chernetsky used natural oils without incident. Before the 2004 implementation of AR 810, NDOC had allowed both natural oils and fire for decades. *See* 2-ER-177 (oils); 3-ER-237–238 (fire). These years passed, according to an NDOC chaplain, "without any incidents of abuse or misuse reported in the entire system." 3-ER-238. NDOC has given no reason to believe that Chernetsky will abuse natural oils now, after decades of using them safely.

Given this reality, NDOC has implied that its actual concern is not that Chernetsky will misuse the oils, but that other inmates would abuse the privilege. In response to Chernetsky's request for oils on remand, counsel for NDOC acknowledged that they "appreciate[d]" his "intention to not use oils in a way that would violate AR 810.02 [sic] or otherwise harm the safety and security of the institution." 1-FER-9. But, counsel explained, NDOC could not accommodate Chernetsky because

"[a]lthough some inmates may use 'natural' or 'essential' oils in a trustworthy and responsible way, it is inevitable that other inmates will abuse them if given the opportunity." *Id.*

RLUIPA is clear, however, that hypothetical abuses by other inmates cannot qualify as a compelling interest. *See Ramirez*, 142 S. Ct. at 1280 (rejecting as insufficient under RLUIPA hypothetical concerns about future cases). Moreover, NDOC's argument is built on the assumption that it would have to grant other requests. "At bottom, this argument is but another formulation of the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions." *Holt*, 574 U.S. at 368 (internal quotation omitted); *see also Nance v. Miser*, 700 F. App'x 629, 633 (9th Cir. 2017) (emphasizing the point in religious-oils context).

NDOC cannot prove a compelling interest in enforcing its ban on natural oils against Chernetsky—let alone that a total ban is necessary to address its concerns.

### 3. NDOC has failed to show that allowing natural oils would impose unworkable administrative burdens.

Regarding the second of its two interests, NDOC contends it is "impracticable to expect [it] to inspect every bottle of oil Chernetsky obtains." Answering Br. 12. But the only evidence supporting this administrability interest—again, Frobes—is conclusory and speculative. *See Sumner*, 917 F.2d at 386 (emphasizing that even under the *Turner* standard, "[p]rison authorities cannot rely on general or conclusory assertions to support their policies").

Frobes says that permitting "scented oils" would require "staff to determine potential danger to other inmates or staff, or whether the oils are tainted prior to allowing inmate possession." 2-ER-70. But he provides no evidence that these purported risks—"potential danger" of an unspecified kind and "tainting" with some unspecified substance—are meaningful enough to require heightened inspection. *Id.* Frobes's one-sentence conclusion about "scented oils" is also not tailored to Chernetsky or to the natural oils he seeks. *See Holt*, 574 U.S. at 362–63 (requiring tailored evidence).

In its answering brief, NDOC complains that the inspection of Chernetsky's oils would be "untenable." Answering Br. 7. But neither Frobes nor NDOC explains what this inspection would look like or why it would be too difficult. If anything, the administrative burdens of accommodating Chernetsky would be negligible since he requires only a few drops of oil per ritual—one bottle would go a long way, making inspections infrequent. *See* 2-ER-136.

In fact, Frobes declares that the "most significant burden" would be the inspection of *other inmates'* packages. 2-ER-70 (asserting that prison would incur burden of "receiv[ing] numerous unauthorized packages for inmates"). But, again, such concerns about other inmates cannot amount to a compelling interest under RLUIPA because they are not tailored to Chernetsky. *See Nance*, 700 F. App'x at 632–33 (dismissing prison's concern that allowing anointing oils for plaintiff would burden prison with requests from other inmates).

And even if NDOC could show some administrative burden, it does not attempt to estimate the extent of that burden in terms of increased cost, staffing demands, or other operational needs. *See* 2-ER-69–71 (Frobes providing no such details). NDOC therefore cannot come close to

showing a compelling interest in administrability. *See Shakur v. Schriro,* 514 F.3d 878, 887, 889–90 (9th Cir. 2008) (conclusory declaration about Kosher-meal costs did not support RLUIPA summary judgment for prison); *Garner v. Kennedy*, 713 F.3d 237, 245–46 (5th Cir. 2013) (prison failed RLUIPA strict scrutiny because it did not estimate increased costs or operational burdens of accommodation).

Regardless, RLUIPA's mandate "may require a government to incur expenses in its own operations," 42 U.S.C. § 2000cc-3(c), especially when those expenses represent a small percentage of a prison's aggregate expenditures. *See Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 795 (5th Cir. 2012) (characterizing even the $88,000 annual cost of serving kosher meals to all observing inmates as "minimal," with the cost of serving the plaintiff representing only a "fraction of this").

Finally, and as described in our opening brief, NDOC's administrability argument is not specific to natural oils. NDOC inspects everything that comes through its doors—from crafting supplies to quarterly clothing-and-food packages to ordinary mail. *See* AR 260 at 4 (permitting inmates to purchase crafting supplies from approved vendors, with supplies inspected before delivery); AR 711.1 at 13–14

(same, for quarterly packages); AR 750 at 5 ("All incoming mail . . . will be opened for the inspection for contraband, unauthorized items . . . ."); 2-ER-44 (NDOC administrator stating that "[r]eligious mail is treated no differently than is regular mail"). NDOC does not explain why it can inspect these items, but not natural oils. *See Johnson*, 23 F.4th at 1217 (holding that "underinclusive policing of scented products" undermined NDOC's ban on scented oils). RLUIPA demands more. *See City of Boerne v. Flores*, 521 U.S. 507, 534 (1997) (recognizing strict scrutiny as "the most demanding test known to constitutional law").

## C. In any event, a total ban on natural oils is not the least restrictive means for furthering NDOC's interests.

Even if NDOC could establish a compelling interest, it must also prove that its total ban on natural oils is the least restrictive means of furthering that interest. This second requirement is an "exceptionally demanding" one that "requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden" on the inmate's faith. *Holt*, 574 U.S. at 353 (internal quotation and alteration omitted). The prison must "set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by the prisoner." *Warsoldier v. Woodford*, 418

F.3d 989, 1000 (9th Cir. 2005) (internal quotation omitted). To meet this requirement, the prison must show it "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Id.* at 999.

Under this demanding standard, NDOC's categorical ban is indefensible. NDOC has provided no evidence it "actually considered and rejected" less restrictive measures, including regulations Chernetsky suggested on (1) quantity, (2) use, and (3) vendors. *See, e.g.*, 2-ER-17 (Chernetsky proposing that he be allowed to use "a small amount of anointing oil"); 2-ER-15 (Chernetsky proposing donation and storage with the chaplain through NDOC's Group Religious Property program); 2-ER-18 (Chernetsky proposing that NDOC could approve a trusted vendor, as it has in the past).

*First*, NDOC has provided no evidence that a quantity restriction— limiting Chernetsky to a small amount of natural oils—is inadequate to address its concerns. NDOC's current regulations, for example, allow inmates to obtain "up to four, 1/2 ounce bottles of oil, to have with their personal property, each calendar quarter." AR 810.2 (2023) at 2. (For reference, a half ounce is equivalent to one tablespoon.) NDOC could

permit Chernetsky natural oils through similar quantity restrictions. After all, Chernetsky's worship requires only a few drops. *See supra* at 20–21.

NDOC claims it is "plain to see" and "obvious" that Chernetsky would be able to "weaponize[]" even "small quantities" of natural oils. Answering Br. 7, 13. But it provides no details on how Chernetsky, or anyone else, could "weaponize" a few drops of oil. Moreover, calling a risk "obvious" does not suffice under RLUIPA: NDOC must provide "detailed evidence" on why a quantity restriction is infeasible. *See Johnson*, 23 F.4th at 1217 ("[A]lthough government witnesses testified that they believed the scent of the prayer oil was powerful enough to cover the smell of contraband, those witnesses did not present detailed evidence *on the quantity needed to do so*." (internal quotation omitted and emphasis added)).

*Second*, NDOC nowhere explains why it could not regulate Chernetsky's use of natural oils. NDOC employs a check-in/check-out procedure for many religious items. *See, e.g.*, AR 810.2 (2023) at 3 (permitting herbs, minerals, and incense as "allowable faith group property" which "must be securely stored in authorized chapel storage for

group use and are subject to search by NDOC staff"). If NDOC is worried that Chernetsky might misuse the oils, it could also require that his use be supervised. *See Nance*, 700 F. App'x at 632 (crediting chaplain supervision as a less-restrictive alternative to a total ban on scented oils).

After all, it appears that NDOC employs a check-out-and-supervise procedure for other items it considers dangerous, like tools. *See* AR 411 at 6–7 (tool control regulation). NDOC takes a measured approach, setting different levels of supervision for different tools. Inmates using bolt cutters, knives, meat forks, and axes require "direct supervision," while picks, ropes, and wood saws require only "direct observation." *See id.* at 9–10. None of these items, though, is apparently dangerous enough to warrant a categorical ban. And it's not just for work: NDOC appears to follow a similar approach for "dangerous hobbycraft materials/tools." *See* AR 260 at 2 (hobbycraft regulation). NDOC fails to explain why policies like these could not be instituted for natural oils—even if they were as dangerous as NDOC claims.

If necessary, NDOC could also supplement supervision with more specific restrictions on use. It could, for instance, require that anointment occur only beyond a certain distance of fire. And of course, NDOC could

revoke privileges from any inmate who "abuses the exemption in a manner that undermines the prison's compelling interests." *Holt*, 574 U.S. at 369. As explained above, NDOC has not shown that prohibiting natural oils furthers a compelling interest in safety; but even if it could, less-restrictive regulations on use could address NDOC's concerns while allowing Chernetsky to anoint as his faith requires.[5]

*Third*, NDOC has nowhere explained why a vendor restriction is inadequate to mitigate its administrability concerns. As discussed above, NDOC assumes that approving natural oils would lead to "unauthorized" packages from unknown senders, each requiring allegedly burdensome, individual inspection. 2-ER-70.

But NDOC's hands aren't tied here: nothing is stopping it from approving a designated vendor for natural oils, like it does for all sorts of other items. Food and clothing packages, for example, must be purchased from an approved vendor. *See* AR 711.1 at 13. The same is true of hobbycraft materials. *See* AR 260 at 4.

---

[5] To ensure that any restrictions on Chernetsky's use are compatible with his religious exercise, a remand by this Court for an entry of judgment in Chernetsky's favor could include instructions that NDOC adopt a less restrictive regulation that is consistent with Chernetsky's worship.

In fact, for more than 20 years leading up to the 2004 ban, NDOC allowed inmates to purchase natural oils from an approved vendor, AzureGreen. 2-ER-92; 2-ER-178. Although NDOC no longer uses AzureGreen due to a "contractual dispute," it does not even try to claim this dispute implicates a compelling interest. 2-ER-98. Approving a trusted vendor and requiring that all purchases be made through that vendor is a simple solution that minimizes any inspection burden while allowing Chernetsky to practice his faith.

Finally, NDOC could implement a combination of these less-restrictive alternatives if that were deemed necessary. NDOC's lack of evidence that it "actually considered and rejected" any of them, though, is fatal under RLUIPA. *Warsoldier*, 418 F.3d at 999.

## CONCLUSION

NDOC has had 17 years to come up with an adequate justification for its natural-oils ban. Today, it comes up short once again.

Because NDOC's denial of natural oils cannot survive strict scrutiny, this Court should not only reverse but also remand for entry of judgment in Chernetsky's favor once and for all. If absolutely necessary, this Court should remand for trial.

Date: February 23, 2024

Respectfully submitted,

STANFORD LAW SCHOOL
RELIGIOUS LIBERTY CLINIC

By: */s/ James A. Sonne*

*Attorneys for Appellant*
Anthony Chernetsky

**CERTIFICATE OF COMPLIANCE**

The foregoing **Reply Brief** contains <u>6129</u> words, including <u>0</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief complies with the word limit of Cir. R. 32-1.

Dated: February 23, 2024

<u>/s/ James A. Sonne</u>
James A. Sonne

*Attorney for Appellant*
Anthony Chernetsky

# CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing document, **Appellant's Reply Brief**, with the United States Court of Appeals for the Ninth Circuit, using the CM/ECF system. I further certify that all parties, through their counsel of record, are registered as ECF filers and that they will be simultaneously served via Notice of Docketing Activity (NDA).


Dated: February 23, 2024          */s/ James A. Sonne*
                                  James A. Sonne

                                  *Attorney for Appellant*
                                  Anthony Chernetsky